UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Robert Rovaldi :<br>:<br>Plaintiff, :<br>:<br>v. :<br>:<br>Suzanne Courtemanche, :<br>Craig Manemeit, and Town of Branford :<br>:<br>Defendants. : | No. 3:04cv1722 (MRK) |

# MEMORANDUM OF DECISION

This case perfectly illustrates the maxim, "No Good Deed Goes Unpunished." Plaintiff Robert Rovaldi sues various defendants for violations of state and federal law arising from a forced entry into the home that Mr. Rovaldi shares with his elderly mother. Mr. Rovaldi was away from the home at the time of the forced entry. Emergency services personnel forced their way into the home because they believed, albeit mistakenly, that Mrs. Rovaldi's health and safety were in danger. Mrs. Rovaldi was originally a party plaintiff, but at her request [doc. #38], the Court entered a voluntary dismissal [doc. #41] of all of her claims against Defendants. Currently pending before the Court are Defendants' motions for summary judgment [doc. ##18, 42, 47] on all of Mr. Rovaldi's claims. For reasons discussed below, the Court GRANTS Defendants' motions for summary judgment.

**I.**

The undisputed facts, taken in the light most favorable to Mr. Rovaldi, are as follows.[1] Robert Rovaldi lives with his elderly mother, Mrs. Elsie Rovaldi, in Branford, Connecticut. On December

---

[1] As required by Local Rule 56, all parties filed statements of material facts [docs. ##20, 42, 49, 55, 56]. The Court notes that Plaintiff admitted the accuracy of all the statements in Ms. Courtemanche's Rule 56 Statement [doc. #20], disputing just one, paragraph 7, on the basis of admissibility.

3, 2001, Mrs. Rovaldi was discharged from the hospital. Mrs. Rovaldi was eighty-eight years old at the time and in frail health. She had recently fractured a hip, required a walker, and suffered from various other ailments. Therefore, upon discharge from the hospital, Mrs. Rovaldi was in need of the care and assistance of a visiting nurse.

VNA Community Healthcare was contracted to provide such in-home care to Mrs. Rovaldi. Mrs. Rovaldi signed an Admission and Consent Agreement with VNA Healthcare that expressly gave "permission for authorized personnel of the VNA to perform all necessary procedures and treatments as prescribed by [her] physician for the delivery of home health care." *See* Admission and Consent Agreement, Plaintiff's Memorandum of Law in Response to Defendant's Motion for Summary Judgment [doc. #57] Ex. 1. Mrs. Rovaldi did not have scheduled VNA visits on weekends. However, on Saturday December 21, 2001, Defendant Suzanne Courtemanche, a registered nurse employed by the VNA, was assigned to contact Mrs. Rovaldi and set up an appointment to provide her with home health care on Sunday, December 22. The reason for this change to the ordinary schedule was that Mrs. Rovaldi's doctor had changed her medications on Friday, and the VNA believed that Mrs. Rovaldi's son would be out of town for the weekend, leaving Mrs. Rovaldi alone at home.

On December 21, Ms. Courtemanche tried to contact Mrs. Rovaldi by telephone but received no response. The next day, December 22, Ms. Courtemanche tried again to contact Mrs. Rovaldi by telephone, but once again was unable to reach her. Having been unable to reach her client by telephone for more than a day, and aware that no one was at home with Mrs. Rovaldi, Ms. Courtemanche decided to go in person to Mrs. Rovaldi's home. Ms. Courtemanche knocked on both the front and back doors of Mrs. Rovaldi's home but no one answered. However, Ms. Courtemanche

thought she could hear Mrs. Rovaldi saying something indiscernible from inside the home. Alarmed by the possibility that Mrs. Rovaldi might have fallen and injured herself, Ms. Courtemanche consulted by telephone with Mrs. Rovaldi's primary care nurse at the VNA, and then called the Branford Police Department and requested assistance to gain entry to Mrs. Rovaldi's home.

Officer Craig Manemeit, also a Defendant, responded to Ms. Courtemanche's call and drove to Mrs. Rovaldi's home. Ms. Courtemanche told Officer Manemeit that she was a nurse with the VNA, and that she had come to visit a frail and elderly client whom Ms. Courtemanche believed was alone in the house for the weekend. She explained that she had been unable to reach her client by telephone since the day before, that she had tried both doors, but no one answered, and that she thought she had heard calling from inside. Ms. Courtemanche explained that she was concerned for the safety of her client, because she was an eighty-eight-year-old woman suffering from a fractured hip, and at risk of falling and injuring herself. Officer Manemeit then knocked on the front and back doors himself, but he received no response, and was unable to see through the windows because the shades were drawn.

Believing that Mrs. Rovaldi was in need of immediate medical assistance and in imminent danger of serious physical harm, Officer Manemeit consulted with one of his superiors and then directed Fire Department personnel to force open the back door of the residence and enter the premises. Accordingly, the Fire Department removed the back door frame and emergency personnel entered the house with Ms. Courtemanche. Mrs. Rovaldi was located in the bathroom, in no apparent distress. She explained that although she had heard banging and had yelled a response, she had not been able to answer the door. The Fire Department then resecured the back door, and Ms. Courtemanche examined Mrs. Rovaldi. Once Ms. Courtemanche had confirmed that Mrs. Rovaldi

was in a stable condition, she left the house. This lawsuit followed.

## II.

Mr. Rovaldi asserts several claims against Defendants, and the Court will discuss them in turn. His first claim is that Ms. Courtemanche committed trespass under Connecticut common law. Mr. Rovaldi's trespass claim is flawed in a number of respects.

As an initial matter, the Court notes that under Connecticut law, a plaintiff in a trespass action must show title in or actual exclusive possession of the property on which the defendant has trespassed. *See, e.g.*, *Zanoni v. Hudon*, 42 Conn. App. 70, 74 (1996) (citing *Bernardo v. Hoffman*, 109 Conn. 158, 161 (1929)). Although Mr. Rovaldi undisputedly resides with his mother in the Branford property, the only reference to Mr. Rovaldi having an ownership interest in the property is a cursory statement in his Memorandum in Response to Defendant's Motion for Summary Judgment [doc. #57]: "Elsie Rovaldi lived with her son, Robert Rovaldi, *in a home he co-owned*." *Id.* at 1 (emphasis added). Mr. Rovaldi has produced no evidence of any description to support this passing reference to co-ownership. Therefore, on the basis of the allegations in the Complaint and the evidence produced in connection with the summary judgment motion, the Court has serious doubts that Mr. Rovalid has standing to assert a common law trespass claim.

Assuming *arguendo* that Mr. Rovaldi does have standing to pursue a trespass claim, that claim fails for two other reasons. First, the crux of Mr. Rovaldi's trespass claim is that Ms. Courtemanche had no authority to enter the property or to cause others to enter the property. Complaint ¶ 13.[2] Although Ms. Courtemanche did not have a scheduled appointment to visit Mrs.

---

[2] While Mr. Rovaldi alleges a lack of consent, he produced no evidence to support that allegation in connection with the motions for summary judgment. In particular, neither he nor his mother submitted any affidavit. Therefore, Mr. Rovaldi produced no evidence at all to rebut Ms.

Rovaldi on Sunday, December 22, 2001, the undisputed evidence shows that Ms. Courtemanche had authority, under the terms of the Admission and Consent Agreement signed by Mrs. Rovaldi, to take the steps necessary to inform her of the change in her medications and to secure her health and safety. Under Connecticut law, consent to entry bars an action for trespass. *See Hanson v. Carroll*, 133 Conn. 505, 508 (1947). The Court wonders (albeit only rhetorically) what position Mr. Rovaldi would have taken on Ms. Courtemanche's duty to enter Mrs. Rovaldi's home had Ms. Courtemanche ignored the multiple signs of possible danger, only later to discover that Mrs. Rovaldi was indeed lying injured within the house and in need of assistance.

Second, to maintain a trespass action, Mr. Rovaldi must demonstrate that the property trespassed upon suffered "direct injury." *See, e.g.*, *Abington Limited Partnership v. Talcott Mountain Science Center, Inc.*, 43 Conn. Supp. 424, 427 (Conn. Sup. Ct. April 18, 1994) (citing *Avery v. Spicer*, 90 Conn. 576, 579 (1916)). Although Mr. Rovaldi baldly asserts that there was damage to the door and walls surrounding the door, Complaint ¶ 17, there are no facts in the record to support his conclusory allegation. Therefore, his trespass claim cannot withstand summary judgment. *See, e.g.*, *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor. Thus the non-moving party may not rely on conclusory allegations or unsubstantiated speculation.") (internal quotation marks and citation omitted).

Mr. Rovaldi next claims that Branford police officer Craig Manemeit violated Mr. Rovaldi's

---

Courtemanche's assertion that she and the VNA had authority to enter the home if concerned about Mrs. Rovaldi's health. The fact that Mr. Rovaldi did not submit any affidavit from his mother regarding the scope of her consent to the VNA appears to the Court to be particularly telling.

Fourth Amendment right to be free from unreasonable searches when he entered Mr. Rovaldi's home without a warrant and without determining whether Ms. Courtemanche had authority to permit him to enter the home. Complaint ¶¶ 14, 16. Mr. Rovaldi's Fourth Amendment claim fails because Officer Manemeit's entry into Mrs. Rovaldi's home falls under the emergency exception to the warrant requirement. A police officer is not obliged to waste precious time applying to a judge for a warrant to enter a home when, as here, he reasonably believes that there is a person inside in need of immediate aid. *See Mincey v. Arizona*, 437 U.S. 385, 392 (1978); *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998). Officer Manemeit was informed by a registered nurse charged with Mrs. Rovaldi's care that Mrs. Rovaldi was eighty-eight years old, at risk of falling from a recent hip fracture, home alone in a house with shaded windows and locked doors, responding neither to phone calls nor knocking for over more than a day, and possibly crying out for help inside. Under these circumstances, Officer Manemeit could reasonably believe that an elderly woman inside the house was in need of immediate assistance, and his entry onto the premises was not barred by the Fourth Amendment.[3]

      Finally, Mr. Rovaldi asserts that, under the Supreme Court's decision in *Monell v. NYC Department of Social Services*, 436 U.S. 658 (1978), he is entitled to damages from the Town of Branford because Officer Manemeit's allegedly illegal entry was facilitated by the Town's failure to maintain a list of the names and identities of health care providers making home visits and the times at which they are authorized to enter the dwellings of their patients. Complaint ¶ 15. Because the Court has already concluded that Officer Manemeit's entry did not violate Mr. Rovaldi's

---

[3] Because the Court concludes that Officer Manemeit's entry was lawful under the emergency exception to the warrant requirement, it does not reach his qualified immunity defense.

constitutional rights, his *Monell* claim against the Town of Branford must also fail. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original).

### III.

For the foregoing reasons, the Court GRANTS Defendants' motions for summary judgment [docs. ##18, 42, 47]. **The Clerk is directed to enter judgment for Defendants and to close this file**.

IT IS SO ORDERED.

/s/      Mark R. Kravitz      
United States District Judge

**Dated at New Haven, Connecticut: December 16, 2005**.